## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONICA AUSTIN** ) | |
| 6100 WESTCHESTER PARK DR. APT.1607 ) | CIVIL ACTION NO. _____ |
| COLLEGE PARK MARYLAND 20740 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **AMERICAN INSTITUTE FOR RESEARCH** ) | |
| **Aka( AIR)** ) | |
| 1000 THOMAS JEFFERSON ST. NW ) | |
| WASHINGTON, DC 20001 ) | |
| ) | |
| **<u>SERVE: RESIDENT AGENT</u>** ) | |
| Superintendent DCRA ) | |
| Division of Corp. ) | |
| 1100 4th Street, SW ) | |
| Washington, DC 20024 ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff Monica Austin, by and through counsel, C. Sukari Hardnett and the Law Office

of C. Sukari Hardnett, brings this civil action against Defendant, on the grounds and in

the amounts set forth herein:

## PRELIMINARY STATEMENT

This is an action for unlawful race based employment discrimination in violation of Title VII of

the Civil Rights Act, as amended, 28 U.S.C. § 2000(e); for Retaliation and Hostile Work

Environment under <u>Title VII of the Civil Rights Act of 1964 (Title VII)</u>; for discrimination

based on the Americans with Disabilities Act (ADA), 42 U.S.C. §§12102, 12111(8), and

in violation of the Family Medical Leave Act (FMLA), 29C.F.R. §825 et seq. Plaintiff

seeks actual, statutory and punitive damages, and all attorney's fees and costs incurred in

connection with the filing of this action.

## JURISDICTION AND VENUE

This court has diversity jurisdiction over the claims in this action, pursuant to 28 U.S.C. § 1332,

as the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars

($75,000.00), exclusive of interest and costs, and Plaintiff is a citizen of a different state than of

which the Defendant is a citizen.

Additionally, all the above stated ACTS provide for the institution of a civil action for damages

and equitable relief against an employer by an employee, in any federal or state court of

competent jurisdiction.

Venue is proper in the US District Court for the District of Columbia, in accordance with 28

U.S.C. § 1331, as it is the judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff timely filed a charge of discrimination against Defendant with the Equal

Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90

days after receiving a notice of the right to sue from the EEOC. A copy of the notice of

the right to sue is attached as Exhibit A. *See* 42 U.S.C. §2000e-5(f)(1).

## PARTIES

Plaintiff Monica Austin is a resident of Prince George's County, Maryland. She was

employed by the Defendant as an Administrative Assistant from 2001 to 2007 and as an

HR coordinator from 2007 until her wrongful termination in 2011. Plaintiff is an

employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is an African American female with a disability. *See* 42 U.S.C. §2000e(f).

1. Defendant is a company that at all times relevant to this action transacted business and operates in the District of Columbia. Defendant is an employer within the meaning of Title VII. *See* 42 U.S.C. §2000e (b) and the FMLA, 29 C.F.R. §825.105(b).

## FACTUAL ALLEGATIONS

2. Plaintiff was employed by Defendant for over 10 years and held two positions during that period as an administrative assistance and as an HR coordinator before her termination. Plaintiff has an undergraduate and a master's degree in business.

3. Plaintiff never had problems with her job or work before becoming ill in 2007, when she transferred to the HR Department. Plaintiff moved to this HR position at the onset of her illness. In 2007, Plaintiff was diagnosed with Lupus, Raynaud's Syndrome, Depression and Lime disease. Plaintiff was very ill but tried to keep up and maintain, but had difficulty doing so.

4. In 2007, based upon her doctor's medical advice, Plaintiff applied for FMLA leave and was out on leave from July 2008 until October 2008. In October 2008, four months into her FMLA leave, Plaintiff was told by her supervisor Jeff Mike that her job was no longer protected or covered by FMLA. Plaintiff was told that she had to return to work or she would lose her job she was not given any other medical options. Plaintiff, who was scheduled to have surgery, cancelled her surgery and returned to work out of fear that she would lose her job and her health benefits.

5.      When Plaintiff returned to work she requested accommodations which she did not

receive. Instead, the work demands increased causing Plaintiff to cancel doctor's

appointment and PT/OT appointments. This had a negative impact on Plaintiff's health

because she needed OT/PT to help her cope with the pain. She needed to keep the

doctor's appointments to maintain her health.

6.      A couple employees left HR and Plaintiff was assigned some of their tasks, which added

to her stress. Plaintiff began to experience chest tightness as the stress level at work

increased.

7.      The work continued to pile up and Plaintiff's physical and mental condition deteriorated.

Plaintiff's pain level and flair ups increased as the work levels increased. Plaintiff was

confronted with limited mobility due to joint and muscle pain from the Mixed Connective

Tissue Disease/Lupus/RA.

8.      On a daily basis, Plaintiff's hands and knees were painful. It took Plaintiff longer to do

everything at work. When her hands, knees and arms cramp she required breaks but the

work load was heavy that she could not take breaks. Walking to perform basic task took

longer than the average person. All these things affected Plaintiff's job, but she did not

receive accommodations.

9.       Plaintiff constantly lived in fear of losing her job. On about September 2011, Plaintiff

was changed from a salaried employed to an hourly employee and told that it would

allow her to make up the time that she had taken off for FMLA leave.

10.     The work atmosphere at AIR became more hostile and unbearable, and Plaintiff began

experiencing even greater stress, compounded by her illness, which was still causing her

pain due to the overload of work assignments that Plaintiff was being asked to undertake

on an overtime basis.

11.    As a result of Defendant's abject disregard for Plaintiffs medical needs and the lack of accommodation provided to her on the job, Plaintiff felt overwhelmed by her circumstances. She began to experience severe stress reactions manifested by her lack of concentration, inability to sleep at night, low energy level, and an overwhelming sense of fear and anxiety.

12.    In 2010, Plaintiff requested a transfer to a different department and was told by Jeff Mike that there were no jobs available. Plaintiff knew that jobs were available because she posted the job listings.

13.    In 2011, Plaintiff was falsely accused of not paying her manager's American Express bill and falling behind on all of her assignments when in fact her work load had increased. Jeff Mike and Kathleen Small excluded Plaintiff from weekly individual staff meetings, training and guidance sessions from 2009 until Plaintiff was terminated in 2011.

14.    When Plaintiff could not complete work at the office she was instructed to take it home to complete. Plaintiff was usually the first one in the office and the last one to leave in an attempt to keep up with her work assignments.

15.    Throughout 2010 and 2011, Plaintiff's desk was moved around the office. Plaintiff was told by Jeff Mike that she had to give advance notice when she was "going to be sick" but other employee were not required to provide such notice.

16.    Plaintiff was given additional work responsibilities during her last year of employment. When other employees left she was given their work and told that it was a temporary arrangement. However, that was not true and Plaintiff was required to perform the extra work without additional compensation and without accommodation.

17.     When Plaintiff brought doctor's notes in to verify her illness, she was constantly told that the notes were not sufficient and she needed to take them back to the doctor for clarification. Plaintiff and her doctors felt harassed.

18.     Four months prior to Plaintiff's termination in 2011, she was placed on a Performance Improvement Plan (PIP) and told that she had to perform all task assigned to her or she would be terminated. During this time, Plaintiff had been assigned the duties of Terease Larocca, who resigned. Plaintiff was expected to do both jobs with no accommodation for her disability while she was on a PIP.

19.     On October 25, 2011, Plaintiff received a letter from Defendant firing her effective that day. Since that time Plaintiff has sought employment. She lost her medical benefits and could not afford the COBRA coverage. Plaintiff filed suit.

## COUNT I

## WRONGFUL DISCHARGE

Paragraphs five (3) through fifty-two (20) are incorporated by reference as if fully set forth herein.

21.     Defendant discharged the Plaintiff because she requested accommodations for her disability. Defendant violated the law; Defendant was aware of Plaintiff's disability and refused to accommodate it and terminated her.

22.     On September 2011, when Ms. Austin informed her supervisor that she was ill and could not work overtime and requested a transfer the supervisor told her that there were no jobs available. This was a blatant slap in the face because Plaintiff was the person responsible for posting all job opening. She knew what positions were available.

23.     Ms. Austin was forced to work overtime and constructively prevented from taking

needed breaks starting in 2007 throughout her employment until 2011.

24. After Ms. Austin informed her supervisor that she could not work because she was in too much pain, the supervisor Jeff Mike informed Plaintiff that he would place on an hourly salary so that she could make up the time that she took off with FMLA. The actions of the Defendant were unconscionable, demeaning and in violation of the law.

25. An unstated condition of Plaintiff's employment was that the Plaintiff had to perform her job duties and functions in violation of applicable laws and regulations. Thus Defendant essentially wanted the Plaintiff to choose between her health and maintaining her employment.

26. Defendant's termination of the Plaintiff was in violation of public policy and the ADA, Title VII and the FMLA.

27. Defendant discharged the Plaintiff in bad faith and with malice, and as a result of Defendant's actions detailed herein, Plaintiff suffered emotional harm and mental anguish.

**WHEREFORE**, Plaintiff seeks judgment against the Defendant named on Count I, in the full amount of his actual damages and for One Hundred Fifty Thousand Dollars ($150,000..00) in punitive damages, plus pre and post judgment interest, costs and all such further relief as the court deems just and proper.

## COUNT II

## RACE BASED DISCRIMINATION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.***

Paragraphs five (3) through ten (27) are incorporated by reference as if fully set forth herein.

Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:

>It shall be an unlawful employment practice for an employer -

>to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin

28.    Defendant violated the provisions of Title VII of the Civil Rights Act of 1964 by discriminating against the Plaintiff with regards to the terms and condition of her employment on the basis of her race and by subjecting the Plaintiff, to severe and pervasive, threats, harassment and racial comments, which significantly and adversely altered the conditions of employment and created an abusive working environment.

29.    Defendant used the discriminatory employment practices in violation of Title VII. Although these practices appear to be neutral, they serve to discriminate against a disproportionate number of persons of Plaintiff's race. Plaintiff was told that there were no jobs that she could be transferred to when Defendant knew that Plaintiff posted the job listing and Plaintiff knew that there were positions open. When Plaintiff confronted Jeff Mike about the available positions he became very rude, disrespectful and condescending. Plaintiff never witnessed Jeff Mike address any white person in that manner.

30.    Defendant's race based harassment policy and procedures are defective and dysfunctional. Defendant failed to exercise exercised reasonable care to avoid harassment and to

eliminate it.  Nonetheless, Plaintiff acted with reasonable care to take advantage of the

employer's safeguards and to otherwise prevent the harm that could not have been

avoided.

31.    As a result of the discrimination, Plaintiff suffered emotional pain, inconvenience, mental

anguish and other damages.

**WHEREFORE**, Plaintiff seeks judgment against the Defendant for compensatory

damages in the amount of One Hundred Thousand Dollars ($100,000.00), punitive

damages, plus interest, costs, attorney's fees and all such just and further relief as the

court deems just and proper.

## COUNT III

## HOSTILE WORK ENVIRONMENT

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.***


Paragraphs five (3) through twenty-three (31) are incorporated by reference as if fully set forth

herein.

Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant

part:

> prohibits employment discrimination based on race,
> color, sex, religion, or national origin. Title VII prohibits
> harassment based on sex, race, or another protected
> characteristic, where the harassment culminates in a tangible
> employment action or is sufficiently severe or pervasive to create
> a hostile work environment.

32.    Defendant violated the provisions of Title VII of the Civil Rights Act of 1964 by discriminating against the Plaintiff with regards to the terms and condition of her employment on the basis of race, age, disability where the harassment culminated in a Plaintiff's termination after being subjected to a pervasive hostile work environment..

33.    As detailed herein, Plaintiff was subject to harassment by Jeff Mike and other management officials, who made threats of termination and false accusations that Plaintiff did not perform her job and placed her on a PIP to justify terminating Plaintiff.

34.    Plaintiff was forced to work overtime and without a break from 2009 to 2011because her work load was increased so that Plaintiff could not take a break and had to work overtime to keep her job. After Plaintiff informed her supervisor that she could not work because she was in too much pain  and needed the accommodation to perform her job her work load was increased. The actions of the Defendant were humiliating, demeaning and unnecessary.

35.    Plaintiff sufficiently communicated that the conduct was oppressive , but it persisted. The conduct was directed towards Plaintiff, specifically, and it was intended to humiliate the Plaintiff and was pointed at the Plaintiff because of her disability and  race.

36.    The harassment continued almost daily, and the harassment was severe in that it included false statements, denial of breaks both associated with and without Plaintiff's disability, and ultimately resulting in termination.  Other African American employees were also subjected to the threatening and humiliating conduct.  Plaintiff was forced to endure an atmosphere freighted with constant threats of termination and demeaning conduct. The harassment and hostile work environment interfered with Plaintiff's work performance.

37.    There is a reasonable basis for imputing liability upon the Defendant, as Defendant has

full knowledge of the misconduct, and failed to maintain adequate procedures to address

the harassment.    Defendant's harassment policy and procedures are defective and

dysfunctional.

38.    Defendant failed to exercise reasonable care to eliminate the harassment and in fact

escalated the harassment by increasing Plaintiff's work load. As a result of the

harassment that led to a hostile work environment, Plaintiff's health was adversely

impacted, and Plaintiff suffered physical pain, inconvenience, mental anguish and other

damages.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual  and

compensatory damages in the amount of One Hundred Thousand Dollars ($100,000.00),

plus interest, costs, and all such just and further relief as the court deems just and proper.

## COUNT IV

## AMERICANS WITH DISIBILITIES ACT (ADA)

Paragraphs five (3) through twenty-three (38) are incorporated by reference as if fully set forth

herein.

39.    Plaintiff is disabled, as defined by the Americans with Disabilities Act (ADA). *See 42*

*U.S.C. §§12102, 12111(8).*  In 2007, Plaintiff was diagnosed with Lupus, Raynaud's

Syndrome, Depression and Lime disease; conditions that substantially limits one or more

major life activities. Plaintiff is otherwise qualified to perform the essential functions of

the job as an administrative assistant and HR coordinator.

40.    Plaintiff is an employee within the meaning of the ADA. *See 42 U.S.C. §12111(4).*

41.    Defendant violated the ADA by intentionally discriminating against plaintiff on the basis

of her disability. Defendant's discriminatory acts include given additional work

11

responsibilities after she requested accommodation because of her disability. When other employees left she was given their work and told that it was a temporary arrangement. However, that was not true and Plaintiff was required to perform the extra work without additional compensation and without accommodation.

42.   When Plaintiff brought doctor's notes in to verify her illness, she was constantly told that the notes were not sufficient and she needed to take them back to the doctor for clarification. Plaintiff and her doctors felt harassed.

43.   Four months prior to Plaintiff's termination in 2011, she was placed on a Performance Improvement Plan (PIP) and told that she had to perform all task assigned to her or she would be terminated. During this time, Plaintiff had been assigned the duties of Terease Larocca, who resigned. Plaintiff was expected to do both jobs with no accommodation for her disability while she was on a PIP.

44.   On October 25, 2011, Plaintiff received a letter from Defendant firing her effective that day. Plaintiff lost her health insurance.

45.   Plaintiff required the reasonable accommodations to perform her job. She was denied a transfer to a position that would accommodate her disability. She was given additional duties which constructively prevented her from taking breaks and going to doctors appointments Although plaintiff requested these accommodations, defendant did not make them. *See 42 U.S.C. §§12111(9), 12112(b)(5)(A).*

## COUNT V

## RETALIATION

## Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.*

Paragraphs five (3) through twenty-three (45) are incorporated by reference as if fully set forth herein.

Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:

> An employer may not fire, demote, harass or
> otherwise "retaliate" against an individual for
> filing a charge of discrimination, participating in
> a discrimination proceeding, or otherwise opposing
> discrimination. The same laws that prohibit discrimination
> based on race, color, sex, religion, national origin, age,
> and disability, as well as wage differences between
> men and women performing substantially equal work,
> also prohibit retaliation against individuals who oppose
> unlawful discrimination or participate in an employment
> discrimination proceeding.

46.   In addition to the protections against retaliation that are included in all of the laws enforced by EEOC, the Americans with Disabilities Act (ADA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA. *See EEOC's Compliance Manual Section 8, Chapter II, Part D.*

47.   Defendant Retaliated against Plaintiff when it refused to accommodate her disability from 2007 to 2011 when Defendant intentionally gave additional work responsibilities to Plaintiff after she requested accommodation because of her disability. When other employees left she was given their work and told that it was a temporary arrangement. Plaintiff was required to perform the extra work without additional compensation and without accommodation.

48.   When Plaintiff brought doctor's notes in to verify her illness, she was constantly told that the notes were not sufficient and she needed to take them back to the doctor for clarification. Plaintiff and her doctors felt harassed.

49.    Four months prior to Plaintiff's termination in 2011, she was placed on a Performance
Improvement Plan (PIP) and told that she had to perform all task assigned to her or she
would be terminated. During this time, Plaintiff had been assigned the duties of Terease
Larocca, who resigned. Plaintiff was expected to do both jobs with no accommodation
for her disability while she was on a PIP.

50.    Plaintiff required the reasonable accommodations to perform her job. She was denied a
transfer to a position that would accommodate her disability. She was given additional
duties which constructively prevented her from taking breaks and going to doctors'
appointments. Jeff Mike and Kathleen Small excluded Plaintiff from weekly individual
staff meetings, training and guidance sessions from 2009 until Plaintiff was terminated in
2011.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual  and
compensatory damages in the amount of One Hundred Thousand Dollars ($100,000.00),
plus interest, costs, and all such just and further relief as the court deems just and proper.

## COUNT VI

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

### 29 C.F.R. § 825 et seq.

Paragraphs five (3) through twenty-three (50) are incorporated by reference as if fully set
forth herein.

51.    Defendant AIR, through the conduct of its officers, agents, and employees,
including, but not limited to Mr. Jeff Mike subjected Plaintiff to a continuing course of
conduct which violated and deprived Plaintiff of her federally protected rights under the
Family and Medical Leave Act(FMLA):

14

a.   By disregarding Plaintiff's doctors recommendations to place her on leave under FMLA, by continuing to require Plaintiff to report to work and undertake work assignments during her scheduled FMLA leave, including working overtime and on weekends;

b.   By disregarding Plaintiff's doctors instructions to place Plaintiff on a modified work schedule and instead requiring Plaintiff to work complete work days and even overtime and weekend assignments soon after returning from FMLA leave;

c.   By increasing Plaintiff's job duties and responsibilities, assignments that other employees had been handling;

d.   By effectively demoting Plaintiff from her position, on her return from FMLA leave and refusing to allow her to transfer to other positions within the company.

52.   As a direct and proximate consequence of Defendant's actions described herein, Plaintiff had been continually deprived of her rights; has suffered loss of income, wages, and benefits and employment opportunities; has suffered other monetary damages, as well as physical and psychological injury, stress, anxiety and distress.

53.   Defendant's actions were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual and compensatory damages in the amount of One Hundred Thousand Dollars ($100,000.00), plus interest, costs, and all such just and further relief as the court deems just and proper.

## DAMAGES

As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

    a.    Plaintiff was terminated from employment with Defendant. Although Plaintiff has diligently sought full time  employment, he has been unable to find a job at comparable pay. In addition, Plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by Defendant.

    b.    Plaintiff has suffered loss of pension or retirement benefits.

    c.    Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of Plaintiff in her previous position is impractical and unworkable. Therefore, plaintiff seeks an award of future lost wages and benefits to compensate her up to the mandatory retirement age of sixty-five (65).

    d.    Plaintiff is entitled to prejudgment interest on lost wages and benefits and post judgment interest on all sums, including attorney fees.

    e.    Defendant's conduct was an intentional and willful violation of the Title VII, the FMLA and the ADA.

## ATTORNEY FEES

Plaintiff is entitled to an award of attorney fees and costs under the Title VII, and the ADA.

## **PRAYER**

For these reasons, Plaintiff asks for judgment against Defendant for all other relief that the

Plaintiff is entitled in addition to all relief the Court deems appropriate, just and fair.

## **JURY DEMAND**

Plaintiff Requests a Trial by Jury on all counts.

Respectfully submitted,
Monica Austin

By: _____/S/_____
        Counsel

C. Sukari Hardnett, Esq.
Bar #MD14840
Law Office of C. Sukari Hardnett
804 Pershing Drive Suite 110
Silver Spring, MD 20910
Tel: (301) 587-7001
s.hardnett@verizon.net