## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MONICA AUSTIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-318 (RJL) |
| | ) | |
| AMERICAN INSTITUTE FOR | ) | **FILED** |
| RESEARCH, | ) | |
| | ) | DEC 0 3 2014 |
| Defendant. | ) | |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(December ____, 2014) [Dkt. #4]

Plaintiff Monica Austin brings this suit against defendant American Institute for Research ("AIR") for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), as well as for violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"). *See generally* Compl. [Dkt. #1]. Defendant AIR moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss ("Def.'s Mot.") [Dkt. #4]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the motion is GRANTED in part and DENIED in part.

### BACKGROUND

Ms. Austin, an African-American woman, was employed by AIR from 2001 to 2011, first as an administrative assistant and then as an HR coordinator. Compl. at 2-3. In 2007, Ms. Austin was diagnosed with Lupus, Raynaud's Syndrome, depression, and

Lyme disease.  Compl. ¶ 3.  She applied for and took four months of leave under the

FMLA, and returned to work in October 2008.  Compl. ¶ 4.

The allegations in the Complaint arise out of plaintiff's treatment upon return from

leave.  Ms. Austin alleges "she requested accommodations which she did not receive"

and that her work demands increased soon after she returned, particularly when she was

assigned the duties of a former colleague.  Compl. ¶¶ 5-6, 16, 18.  In September 2009,

AIR changed plaintiff from a salaried employee to an hourly employee.  Pl.'s Opp'n to

Def.'s Mot. at 2 ("Pl.'s Opp'n") [Dkt. #9].[1]  In 2010, Ms. Austin requested and was

denied a transfer to another department.  Compl. ¶ 12.  Her supervisors excluded her from

weekly individual staff meetings, training, and guidance sessions from 2009 until her

termination.  Compl. ¶ 13.  Throughout 2010 and 2011, AIR moved plaintiff's desk

around the office.  Compl. ¶ 15.  She was required to seek further clarification from her

doctors on the notes she brought in to verify her illness.  Compl. ¶ 17.  In September

2011, AIR placed Ms. Austin on a Performance Improvement Plan ("PIP").  Opp'n at 11.

Ms. Austin again requested a transfer, and again was told no jobs were available.  Compl.

¶ 22.  On October 25, 2011, AIR terminated Ms. Austin.  Compl. ¶ 19.

After her termination, Ms. Austin filed an official charge with the Equal

Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation

on the basis of her race and disability.  Def.'s Mot, Ex. 2 at 2 [Dkt. #4-4].  She now

brings this suit, alleging six counts in her Complaint:  (1) Wrongful Discharge; (2) Race

---

[1] Where AIR disputes in its Motion to Dismiss a date plaintiff referenced in the Complaint and plaintiff acknowledges AIR's date is correct by adopting it in her Opposition brief, I use the date plaintiff adopts in her Opposition.

Based Discrimination, in violation of Title VII; (3) Hostile Work Environment, in violation of Title VII; (4) violations of the Americans with Disabilities Act ("ADA"); (5) Retaliation, in violation of Title VII; and (6) Violation of the Family and Medical Leave Act. *See generally* Compl. She seeks damages and attorney fees. Compl. at 16. Defendant AIR moves to dismiss under Rule 12(b)(6). Def.'s Mot.; Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") [Dkt. #4-1].

## STANDARD OF REVIEW

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

A court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). However, the court need not "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "In ruling on a 12(b)(6) motion, a court may consider facts alleged in the complaint, documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose

3

authenticity is not disputed, if they are referred to in the complaint and integral to a

claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85

(D.D.C. 2011).

## ANALYSIS

### I.     Count II:  Title VII Race-Based Discrimination[2]

To bring an actionable race discrimination claim under Title VII, a plaintiff must

adequately plead that (i) she suffered an adverse employment action (ii) because of her

race. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  A plaintiff must

first exhaust her claim administratively by filing a claim with the Equal Employment

Opportunity Commission ("EEOC") within 180 days of when the alleged unlawful

employment action occurred, or with 300 days if cross-filing with a state or local agency.

42 U.S.C. § 2000e-5(e)(1).

Ms. Austin filed her official charge with the EEOC on April 18, 2012.[3]  Def.'s

Mot, Ex. 2 at 2 [Dkt. #4-4].  The charge was filed with the District of Columbia Office of

Human Rights, *id.*, so Ms. Austin is entitled to the 300-day period.  Therefore, Ms.

Austin's allegations of discrete employment actions are timely only as to those that took

---

[2] Ms. Austin does not oppose AIR's motion to dismiss her District of Columbia common law wrongful discharge claim (Count I).  *See generally* Opp'n (failing to mention wrongful discharge).  Therefore, this claim is conceded.  *See Robinson v. Securitas Servs., Inc.*, 819 F. Supp. 2d 18, 22 (D.D.C. 2011).
[3] Ms. Austin's EEOC Charge is a public document of which I take judicial notice; this does not convert the motion to one for summary judgment.  *See Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011).  In her Opposition brief, Ms. Austin claims she sent an email to the EEOC at an unspecified earlier point in time.  Opp'n at 8.  However, even the language she quotes acknowledges that such an email would not be "an official EEOC charge form." *Id.* (emphasis omitted).

place after June 22, 2011.[4] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

(2002).

"An adverse employment action is a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits." *Douglas v.*

*Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks omitted).  Ms.

Austin alleges she was placed on a PIP and denied a transfer in the fall of 2011, Opp'n at

11; Compl. ¶ 22, but does not allege that her pay, benefits, or responsibilities changed (or

would have changed, had she been granted a transfer).  Neither rises to the level of an

adverse employment action. *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003);

*Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 91 (D.D.C. 2013).  Nor were the

movement of plaintiff's desk around the office, exclusions from meetings, or requests for

clear doctors' notes, Compl. ¶¶ 13, 15, 17—all of which are alleged to have taken place

at least in part within the limitations period—significant alterations to the terms of

employment. *See Johnson v. Bolden*, 699 F. Supp. 2d 295, 300 (D.D.C. 2010) *aff'd*, 492

F. App'x 118 (D.C. Cir. 2012); *Cole v. Powell*, 605 F. Supp. 2d 20, 26 (D.D.C. 2009);

*Weber v. Hurtgen*, 297 F. Supp. 2d 58, 68 (D.D.C. 2003) *rev'd in part on other grounds*

*sub nom. Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007).  Ms. Austin also points to an

increased work load in late 2009 or early 2010,[5] Opp'n at 10, and her change from a

---

[4] Ms. Austin's hostile work environment claim, which is not a discrete employment action claim, is
addressed below.
[5] In paragraph 16 of the Complaint, plaintiff states "Plaintiff was given additional work responsibilities
during her last year of employment." Compl. ¶ 16.  She does not specify when, within that year
preceding October 2011, she received those additional responsibilities, or how they affected her work

salaried to an hourly employee in 2009, *id.* at 2, 12, but these changes took place outside the limitations period and I draw no conclusion as to whether or not such changes would be adverse employment actions.

The only timely adverse employment action Ms. Austin alleges is her termination. AIR does not dispute that her termination in October 2011 was an adverse employment action. *See* Def.'s Mem. at 6. However, *nowhere* in the Complaint does plaintiff allege—even in a cursory fashion—that her termination was caused by her race. Plaintiff broadly alleges that she was subjected to threats, harassment, discriminatory employment practices, and a rude supervisor because of her race. Compl. ¶¶ 28-30. Setting aside the sufficiency of these allegations to state *any* race-based claim, they refer to her work *experience*, and do not state a claim that her *termination* was caused by her race.[6]

## II.    Count III: Title VII Hostile Work Environment

In addition to the discrete employment action claim brought above, Ms. Austin alleges that AIR created a hostile work environment in violation of Title VII. Compl. ¶¶ 32-38. A plaintiff may bring a Title VII hostile work environment claim "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

---

load. In her Opposition brief, she mentions an increased work load only after a colleague departed in late 2009 or early 2010. Opp'n at 10. The assignment of her co-worker's duties in 2010 is the only work load increase noted in the EEOC charge. Def.'s Mot., Ex. 2 at 2. To the extent that another increase in work load occurred later, it was not included in the charge and has not been exhausted.

[6] In her Opposition brief, plaintiff does "proffer[] that the only reason that the Defendant . . . terminated her was because of her race and disability." Opp'n at 20. However, this conclusory statement does not remedy her pleading deficiency. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (explaining that additional factual allegations contained in an opposition to a motion to dismiss are not properly before the court).

create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

Unfortunately for plaintiff, she failed to raise a hostile work environment claim in her EEOC charge, and therefore her claim is barred as unexhausted. "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). Ms. Austin lists a number of actions in her EEOC charge: a change from salaried to hourly employee; an increase in duties without support; a warning about her performance; denials of requests for accommodations, including a transfer and reduced work load; and her termination. Def.'s Mot., Ex. 2 at 2. However, these are allegations of discrete actions, and "mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment claim." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005) *aff'd*, 187 F. App'x 1 (D.C. Cir. 2006); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). The charge does not give AIR fair warning of a possible hostile work environment claim. It "not only lacks the words 'hostile work environment,' but also lacks any factual allegations supporting such a claim." *Park*, 71 F.3d at 908.

The allegations upon which Ms. Austin now bases her hostile work environment claim are different in kind from those raised before the EEOC. Nowhere in her charge does Ms. Austin mention—or give reason to infer—the "harassment," "threats of termination and false accusations that Plaintiff did not perform her job," or "humiliating,

demeaning and unnecessary" actions of AIR that she claims in the Complaint. *Compare*

Compl. ¶¶ 33-36 *with* Def.'s Mot., Ex. 2 at 2. These claims are not "like or reasonably

related to the allegations of the charge," *Park*, 71 F.3d at 907 (internal quotation marks

omitted), and were not exhausted.

## III.   Count IV: Americans with Disabilities Act

Reading the Complaint generously, it appears Ms. Austin attempts to allege two

possible bases for a claim of discrimination under the American with Disabilities Act, 42

U.S.C. §§ 12101-12213: (i) adverse employment action due to her disability, and (ii)

failure to accommodate. Compl. ¶¶ 39-45. If Ms. Austin is attempting to bring an

adverse action claim on the basis of her disability, she is not successful. This type of

claim is analogous to the Title VII race-based discrimination claim described in Count II,

above. "[T]he two essential elements of an ADA claim are that the plaintiff suffered an

adverse employment action, and that the adverse employment action was based on

plaintiff's disability."[7] *Hollabaugh v. Office of the Architect of the Capitol*, 847 F. Supp.

2d 57, 64 (D.D.C. 2012). In Count IV of the Complaint, Ms. Austin refers to her

increased work load, the requests that she submit clarified doctors' notes, her placement

on a PIP, and her termination. Compl. ¶ 41-44. As above, the only timely adverse

employment action is her termination.[8] Just as she does not allege in the Complaint that

---

[7] A plaintiff also must demonstrate she is disabled within the meaning of the ADA and is "qualified" for the position, with or without a reasonable accommodation. *Swanks v. Wash.Metro. Area Transit Auth.*, 179 F.3d 929, 934 (D.C. Cir. 1999). Because it is unnecessary to the resolution of the issues before me, I pass no judgment on whether Ms. Austin has a "disability" as defined by the ADA or was "qualified" for her position.

[8] The ADA incorporates the procedural provisions from Title VII, including the requirement that an individual first timely exhaust all claims with the EEOC. 42 U.S.C. § 12117(a); *see Mayers v. Laborers'*

AIR terminated her because of her race, neither does she allege in the Complaint—directly or indirectly—that AIR terminated her because of her alleged disability.

Under the ADA, an employer can discriminate on the basis of a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee." 42 U.S.C. § 12112(b)(5)(A). Ms. Austin claims that she was not provided the accommodations she requested in order to deal with her diagnosed illnesses. Compl. ¶ 5. Specifically, Ms. Austin alleges that she requested a departmental transfer in September 2011, which was denied.[9] Compl. ¶ 22; Def.'s Mot., Ex. 2 at 2; Opp'n at 13.

The ADA defines "reasonable accommodation" as including "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). Ms. Austin alleges no facts to show *any* vacant position was available, let alone one for which she would be qualified. Her general allegation that "[s]he knew what positions were available," Compl. ¶ 22, does not help her plead that she requested and was denied a reasonable accommodation. The attempt to elaborate in her Opposition brief that she "knew that there were positions available for which she qualified and could perform," Opp'n at 13, does not remedy the issues with her pleading and nonetheless would be too conclusory to advance her position. *See Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170; *see also Iqbal*, 556 U.S. at 678 (discussing pleading standard).

---

*Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007). Therefore, the employment actions upon which Ms. Austin can base her disability discrimination claims are limited in time just as for her race-based discrimination claims.

[9] To the extent Ms. Austin is attempting to bring claims based on accommodations requested soon after she returned from FMLA leave, she does not succeed. Such claims would be untimely, 42 U.S.C. § 2000e-5(e)(1), and plaintiff has not identified what the accommodations were or how AIR denied them.

IV.   **Count V:  Title VII and ADA**[10] **Retaliation**

Title VII and the ADA prohibit employers from retaliating against employees for

opposing unlawful practices or participating in an employment discrimination

proceeding.  42 U.S.C. §§ 2000(e)-3(a), 12203(a).  An employer unlawfully engaged in

unlawful retaliation against a plaintiff if it "took materially adverse action against h[er]

because [s]he participated in protected activity."[11] *Bridgeforth v. Jewell*, 721 F.3d 661,

663 (D.C. Cir. 2013).  A materially adverse action in the workplace is similar to an

adverse action in a discrimination case, in that it "involves a significant change in

employment status." *Id.* (internal quotation marks omitted).  As with other Title VII and

ADA claims, the adverse action must have occurred within the limitations period. *See

Nat'l R.R. Passenger Corp.*, 536 U.S. at 110.

Ms. Austin does not allege that she engaged in any Title VII protected activity

while employed at AIR.  Therefore, she cannot sustain a Title VII retaliation claim.

However, requesting a reasonable accommodation may be protected activity under the

ADA. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 331-33 (D.D.C. 2013) (collecting cases).

Ms. Austin alleges she requested a departmental transfer in September 2011.  Compl.

¶ 22.  She was terminated the next month.  Although Ms. Austin does not adequately

plead that AIR *denied* her a reasonable accommodation because she does not plead that

there was a vacancy for which she was qualified, she does plead that she requested the

---

[10] Count V is entitled "Retaliation" and subtitled "Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.*" Compl. at 12. The Complaint also references the ADA's protection against retaliation, found at 42 U.S.C. § 12203(a), so I include that as well.  Compl. ¶ 46.
[11] In this Circuit, a plaintiff can also bring a claim for a retaliatory hostile work environment, *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) but, as described above, Ms. Austin does not properly allege that she suffered from a hostile work environment.

transfer.  This request for a transfer, coupled with her termination, meets the Rule 12(b)(6) pleading standard.[12]

## V.    Count VI:  Family and Medical Leave Act

An employer violates the Family and Medical Leave Act if it interferes with or denies a plaintiff an FMLA benefit to which she was entitled or retaliates against a plaintiff for exercising an FMLA right.  *See* 29 U.S.C. § 2615(a); *Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43 (D.C. Cir. 2011) (recognizing two types of claims).  Ms. Austin attempts to sue on both types of violations here, claiming that AIR interfered with her 2008 FMLA leave and retaliated against her for taking that leave.  Compl. ¶¶ 4, 51. However, the conduct on which she bases her FMLA claims is either time-barred or too temporally remote to state a claim.

The FMLA allows a plaintiff to bring a civil action within two years after the last event constituting the alleged violation, 29 U.S.C. § 2617(c)(1), or three years if the action is brought for a "willful violation," *id.* § 2617(c)(2).  Ms. Austin filed her Complaint on February 26, 2014.  *See generally* Compl.  At best, Ms. Austin's FMLA claim is timely only as to conduct occurring on or after February 26, 2011.  Ms. Austin returned from FMLA leave in October 2008, Compl. ¶ 4, so any claim of interference with that leave falls well outside the limitations period.  Ms. Austin alleges purportedly-

---

[12] AIR directs the Court to a letter it filed as an exhibit to its Motion to Dismiss and bases some of its arguments off the contents of that letter, but, unfortunately for defendant, the document is not properly before the Court at this point. Ms. Austin alleges that she requested a transfer, Compl. ¶¶ 22, 45, but does not say she did so in a letter.  The letter itself is not "incorporated" into or "referred to" in the Complaint, *Harris*, 825 F. Supp. 2d at 85, and the Court cannot assume that the letter tells the whole story regarding Ms. Austin's transfer request.  AIR's arguments regarding the date of the request and whether or not it actually was a request for an accommodation under the ADA are arguments more appropriate for summary judgment briefing at a later date.

retaliatory actions in her Complaint, but those actions "occurred soon after returning from FMLA leave," Compl. ¶ 51, "on her return from FMLA leave," *id.*, or otherwise admittedly fall outside the limitations period, *see* Opp'n at 10 (acknowledging that she took over assignments from a departed employee in "approximately late 2009 or early 2010," which predates the limitations period).[13]

Finally, to the extent Ms. Austin is trying to rely on her fall 2011 transfer request or her claim that she "was given additional work responsibilities during her last year of employment," Compl. ¶ 16, sufficient time had passed so as not to allow an inference that those changes were retaliation for taking leave that ended in 2008. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (holding in a Title VII context that "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all").

## CONCLUSION

Thus, for all the foregoing reasons, Defendant's Motion to Dismiss [Dkt. #4] is hereby GRANTED in part and DENIED in part.  Plaintiff's Counts I-IV, VI, and Count V as to retaliation in violation of Title VII are DISMISSED.  An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[13] In her Opposition brief, plaintiff appears to argue that her change in status from a salaried to an hourly employee discouraged her from taking FMLA leave, Opp'n at 2, but this too is untimely, as she admits that her change in status occurred in September 2009, *id.* at 2, 12.